All rise. United States Court of Appeals for the Federal Circuit is now open and in session. I say to the United States and the Honorable Court. Please be seated, ladies and gentlemen. Good morning. We have a hybrid proceeding this morning and we need to get connected. Thank you. Please find my watch next to that one. Good morning, Judge Lynn. This is Mila Hall. You are now connected to panel F argument and can be heard by all parties. Can you hear me? Yes, I can. Thank you. Thank you. Your line is now unmuted. We're ready. Good morning again, ladies and gentlemen. We have six cases on the calendar this morning. Two PTAB cases, a district court patent case, a case from the Court of International Trade, and two cases that are submitted on the briefs will not be argued. One from the Merit Systems Protection Board and one from the Court of Appeals for Veterans Claims. Our first case is Indivior, UK Limited versus Dr. Reddy's, 2020-2073. Mr. Rainey, please proceed. Good morning, Your Honors, and may it please the Court. Richard Rainey for Indivior. Respectfully, the Board reversibly erred in finding that the claimed narrower polymer percentage ranges were not described by Indivior's priority application, which disclosed and claimed films having a broad range of polymer with specific examples at the claimed range endpoints. The Board committed two legal errors I would like to focus on today. First, the Board applied the Ruchig framework rather than the framework in Wertheim. But look, Mr. Rainey, you're claiming a range of 40 to 60. That range does not appear as such in the patent. 40 does not appear in the patent. 60 does not appear in the patent. It looks like it was simply cobbled together. If one has an invention and wants to define it in a particular way, one would think that the specification would indicate that this is my invention and it consists of a range of 40 to 60. That does not appear in the patent. As I say, neither 40 nor 60, nor the range. Respectfully, Your Honor, the framework that Wertheim sets out says if you have a broader range, that range necessarily describes narrower ranges within that broad range. So under Wertheim's framework, the presumption is that 40 to 60 is described by at least 25. So I would argue that at least according to the CCPA's framework, that is described by that broader range. In addition... But here you don't even have a calculation in the patent, in the specification of the actual numbers. You have to cobble them together. You have to add numbers together. It's not as though the examples disclose a particular value for the percentage. So the examples disclose, as the Board found, 48.2 and 58.6 for the polymer weight percentage. But that's adding together numbers. Those numbers do not appear as such in the specification, right? Well, again, I think it's a matter of simple math. It's a matter of math. You have to add them together. Yes, you have to add up the polymer weights, which Table 5 shows both absolute weights and percentage weights. And original Claim 5 talked about polymer weight percentage of at least 25%. So I think to a person of ordinary skill in the art, as our expert testified, it's a matter of simple math. I could do the math myself. But look at paragraph 65, which says the film may contain any desired level of polymer, which hardly suggests that the specific amount is critical to the invention. And there it says in one embodiment at least 25, at least 50. These are all over the lot. I think that, well, first of all, the any amount is qualified by an amount that produces a self-supporting film. But I do believe that description is making plain that the inventors possessed a broad range of polymer. And in fact, claimed at least 25%, which necessarily goes up to something less than 100. And it's long been the case that one can claim less than they're entitled to. And that's a longstanding principle of this court's case law. And that's exactly what was done here. In addition, you have two examples, as the board found, of 48.2 and 58.6, which are precisely at at least one of the claim range endpoints. Now, the board gave you the benefit of Claim 8, even though 48.2 was not really specified as the invention, simply because one could add them up. And you're arguing for Claim 7 on the same basis, I guess. But that's claiming a range. And once again, there is no range of 48 to 58. I think a number of this court's cases have found where you have a broad disclosure and specific range, I'm sorry, specific examples. The Nalpropion case comes to mind. It's perfectly appropriate to claim those disclosed examples as part of your range. So again, I think this is perfectly consistent with the long lineage of cases involving ranges that this court and the CCPA have announced. Is there any prior case in which the range has been achieved by adding together numbers the way this is? Well, again, I think, I don't know of a case involving adding numbers specifically off the top of my head, but I don't see where the distinction would be in terms of the INHAC VRBA requirement. To me, that is another way of saying you're going to require INHAC VRBA support. Whether the number appears or has to be added does have some significance in terms of whether it discloses possession of the invention. Well, there's no question that the inventors here possessed polymer weight percentages. That was claimed in the original priority application. And that they claimed ranges of polymer weight percentages. And so in the examples, which again are all part of that collective disclosure, and the disclosure has to be read as a whole, a person skilled in the art would see polymer, polymer, polymer, and add those up to determine what the total polymer weight percentage is. One might say this is almost INHAC numera rather than INHAC VRBA. But these numeras aren't in the patent. Well, I would argue that they are. You know, again... You think one skilled in the art can add? I can add, yes. But certainly one skilled in the art can add. And I don't think, again, there was no dispute among the experts on the addition of the polymers. Dr. Das for DRL also did the addition and had no trouble doing that. So I don't think the addition of the numbers is a distinction here. Well, the difficulty of finding the number isn't the point. It's whether it's disclosed. We're talking about written description. Right. But again, it's written description to a person of ordinary skill in the art, not precise, again, INHAC numero, as you say. I think this is a matter of simple math. Just like a percentage is clearly a range because we know that 100% is the very top number you could get. And we can't have a one-compound invention. This was a film comprising four elements originally claimed. And the very first element was polymer. And one of those dependent claims in the original application clearly called out polymer percentage range. So one would easily understand that to see what this invention is about, one has to do the math. So respectfully, again, if we apply the Wertheim line of cases here, what Wertheim says is a broad disclosed range, in fact, does disclose the narrow ranges within it, and the opponent is able to show there's something different about that. And as Wertheim itself said, in distinguishing genus species cases, there's something very different about different species than there is about a slight difference in a range like we have here. What about the fact that some of the examples that you're relying on aren't even bioequivalent? We don't know that those represent the invention. So you're talking about Table 5, Judge. And the issue with Table 5, our expert pointed out that he was relying on the preferred embodiment of Table 5, which is the formulation 2. And it is true that formulations 1 and 3 were not bioequivalent, but it's apparent from the specification and from the expert testimony that the reason for that has nothing to do with the polymer. The reason for that has to do with changed pH because they were adjusting the buffer in those. And so that may well tell you that the buffer, if this was a range case about buffer, we could be having a different discussion. But this is a range about polymer weight percentage, not buffer. Well, of course, the problem with that is that there's another way of looking at it, and that is that the non-bioequivalent ranges don't show the polymer weight percentage as being within the invention. But only if, so for example, if you look at test formulation 1, it lacks any buffer. So it plainly is not within the scope of the claim. So that doesn't tell you anything about the claim invention. So respectfully, I think the board misunderstood Table 5. And even Dr. Das, DRL's expert, conceded you can't read anything into Table 5 with respect to polymer weight percentages because of what was being tested there. So I don't think that's right. This is Jeff Lynn. The board obviously didn't have any trouble doing the math when it came to Claim 8 and calculating the 48.2 weight percent. But with respect to the range, is there anything in the specification that suggests or indicates that the range set forth in these claims has any particular significance or consequence or importance? And does that matter? Well, under Wertham, I think that it would matter if Dr. Reddy's lab was able to show that there was something different between the broader range and the narrower range in terms of operability. But it's their burden, and they did not put in any evidence on that. I would add that the only significance to the narrower ranges in this case is that they are right at the disclosed examples of 48.2 and 58.6. So as our expert testified, it gives you the clearest description, frankly, of the range within those percentages. And he also did calculations showing how if you varied some of the optional ingredients, you see how the polymer weight percentage varies, can vary a few percent up or a few percent down, illuminating what about means and illuminating that this is a range of polymer weight percentages that's been plainly disclosed to a person skilled in the art. Do you want to say any rebuttal time or continue? I do, Your Honor. I do which? I would like to say my rebuttal time. Then we'll do it. Thank you. Mr. Markey. Good morning, Your Honors, and may it please the Court, Kevin Martin for Dr. Reddy's. Your Honors, the Court should affirm the Board with respect to all but Claim 8 because a person of skill in the art reading the 571 application would not immediately discern the claimed polymer weight limitations, and certainly the Board's decision was supported by substantial evidence in this regard. I would like to start, Your Honors, with the legal issue that the Court was focusing on with my friend during much of his argument, this notion of Wertheim and what the law is with respect to claimed ranges because we think that under this Court's precedents, such as General Hospital and Purdue Pharma, as well as under Wertheim itself, there is no rule that once you disclose some broad range, you're allowed to carve out necessarily some smaller range and claim that. In General Hospital, what this Court said was that a disclosure, for example, of at least 1 times 10 to the 11th particles, even with some additional examples, which bracketed the claimed 6.6 times 10 to the 11th particles, was not sufficient disclosure. There, the Court quite clearly said the disclosure of concentrations from some minimum amount to some unidentified maximum does not provide written description support. Yet that is their principal argument today before this Court, that by saying at least 25 percent, these inventors, these applicants, retained the ability to claim any narrower range between 25 percent and 100 percent. Not even Wertheim says that. What Wertheim says is that it was not creating a rule applicable to all written description cases involving ranges. It was on to say that a mere comparison of ranges is not enough. And what it says, and this is perhaps the most important language for purposes of this case, is that while applicants are allowed to claim less than what they've invented, they can only do so if their specification also reasonably describes that which they do claim. And that is the ordinary practice, of course, in drafting patents. Well, what's necessary to describe an invention? Does one have to say, this is my invention? Or if it's a number, say, is it sufficient that the number appears? The fact that the number appears certainly helps, Your Honor. I'm not sure that that would necessarily be sufficient in all cases, because you do need to read the specification as a whole. Well, 48 and 58 do appear if one adds up two columns, two columns of four items each. Very simple. They do appear, Your Honor, if you do that math, and there was certainly no dispute below. That's almost arithmetic, not even math. But someone could do the arithmetic. But the board had a finding at pages 64 to 65 of the appendix, which we think is an important finding, which is that while someone could do that math, the board said, the specification does not reasonably convey to a person of skill in the art any indication that particular polymer weight percentages, the percentages you get by doing that math, impact any desirable properties in the film, instead focusing on the pH value and the amount of buffer in the film. So this case is actually much like Purdue Pharma, in which it was certainly possible to do the math to derive the Cmax C24 value at issue in this case. But the mere fact that math could be done was not enough to provide written description. There needed to be something in the specification that suggested that the result of that arithmetic was of significance to the invention. And there is nothing here in this specification which suggests that the 48.2 or the 58.6 were significant to the invention. What the board found was that all the evidence in the specification and the opinion of our expert, Dr. Das, pointed the other direction. It suggested that once you cleared whatever unstated hurdle there was to keep the film together, the amount of polymer was irrelevant. You could have any desired level. So we think that with respect to the ranges, Your Honor, the board certainly acted within its discretion as a finder of fact in concluding that the ranges were not disclosed. So then that brings us to your question. Excuse me, Your Honor. If the specification discloses the endpoints of a range, it doesn't necessarily describe them as endpoints of a range, but simply discloses two points, is it necessary to set forth that the values and the values in between those two points have some particular significance? I believe, Your Honor, it would depend upon what the rest of the specification and the testimony from the experts concerning a person of skill in the arts understanding was in a case like that. In a case like Purdue Pharma, where the C-max over C-24 ratio was the subject of some discussion, that's a different scenario. Is it not from this? I don't believe it is, Your Honor, because in this case what you actually have is other language in the specification, which diminishes the importance of those calculated numbers. You have the nearly dozen paragraphs in which the applicants stress the importance of selecting the right individual polymers and the proportion of those individual polymers to each other, rather than the total amount of polymer. Again, once you clear that unstated threshold for keeping the film together, which could be as low as 25%. So you actually have a specification which, as the Board said, leads you away from attributing any significance to the total polymer amount. The mere fact that a couple of figures exist should be insufficient support for finding a range between those two numbers, which again, the fact they weren't even identified in the specification itself, and one would need to do the math, demonstrates that the applicants weren't attributing any significance to those numbers. This is a case, we think General Hospital is probably the best case for us on the facts, and that's an interesting case because there was not only the, at least about one times 10 to the 11th figure, there also were numerous examples in that case of films that were inventive, well, compositions that were inventive compositions. Nonetheless, the Court did not say that that supported a range and some particular number within the range that was not itself disclosed in the specification. So turning to the cross appeal, Your Honor, while it's certainly the case that the 48.2 could be calculated, for reasons we've already discussed, there was no significance to that unstated number that could be derived from tables one and five. Again, I would go back to the, well, obviously the Board ruled against us on. But that's an embodiment that appears in the specification. And one can claim an embodiment, a species that appears in the specification. And if one just adds up the four numbers, there it is. And, Your Honor, if not for the importance that this specification places on the selection of the individual polymers, we might agree with you on that point. However, this specification. That was a hypothesis, not a conclusion. It stresses that you need to select the right types of polymers and have the right proportion of those individual polymers to each other. And so it's no surprise, then, that in tables one and five, what's identified is not 48.2, as if 48.2 has significance. What's identified are the individual polymers, and the characteristics of those individual polymers are provided. They're individual weights, they're individual molecular weights, and the type of polymer in question. The example that leads you to 48.2 is one that's bioequivalent, right? It provides you one example. And if they had claimed it is bioequivalent. They identified that example as bioequivalent. But, again, Your Honor, it was bioequivalent. What one would take from the specification is that it's bioequivalent because of that particular combination, not because it happened to be 48.2%, the number that went completely unmentioned. And this is why we go back to the board, which, although it ruled against us, had some findings that we think actually support us on this point, in particular the finding on pages 64 to 65 of the appendix, where the board said that while that number is disclosed, it does not reasonably convey to APOSA any indication that that polymer weight percentage impacted any desirable qualities of the film. But bioequivalence is an FDA issue. It's an AMDA issue, not a patent issue. So bioequivalence should be irrelevant to what we're considering here, right? The way it becomes relevant to this case, Your Honor, is that the specification, as well as the claims, sets forth dissolution rates that it said make it bioequivalent. And so this patent itself embodies the notion of bioequivalence. It's an ultimate limitation on these films. If the claims don't read, we're claiming what is bioequivalent to a listed approved pharmaceutical product. What they do, Your Honor, is claim films that have certain CMAXs and AUCs, and those CMAXs and AUCs are described in the specification as the numbers that will result in bioequivalence. So it is, in fact, part of these claims and described in the specification. But it's something which has nothing to do with the total polymer amount, has nothing to do with the 48.2, and is described in the specification as resulting from the selection of the individual polymers and the characteristics of those individual polymers. If there are no further questions. Thank you. Thank you, Your Honor. Mr. Moffitt, Mr. Rennie. Very quickly, two points. One, our position on Wertheim is that it creates a presumption that the narrower range is described, not that it automatically means the narrower range is described. DRL did not satisfy its burden to rebut that presumption. That's point one. Point two is, on the issue of significance of the invention, that's not a requirement in written description law that you say some particular feature is significant. However, here, very much unlike Purdue Pharma, there was an original claim claiming polymer weight percentage, and in addition, at least 25%. That was one of four ingredients in this film. I'm not sure one could say in a more blazemark way that polymer weight percentage is part of my invention and range amounts are part of my invention. Was 40 to 60% an original claim? It was not, other than by implication under Wertheim. It is part of at least 25%, but not those specific numbers. However, those numbers, to a person of ordinary skill in the art, are described in the priority application as our expert testified. As far as the cross-appeal goes, we will stand on our briefs on that. Thank you. Mr. Martin, while you have time left, you've got nothing to respond to on the cross-appeal,  Thank you, Your Honors. Thank you, gentlemen. This is submitted. Thank you.